**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No.: 17-cv-2140-WJM-MEH

PAMELA FINE,

    Plaintiff,

v.

JOSEPH M. TUMPKIN,
MIKE MACINTYRE,
RICK GEORGE,
PHILIP DISTEFANO, and
BRUCE BENSON,

    Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

Plaintiff Pamela Fine brings this action to recover damages resulting from Defendant Joseph Tumpkin's physical and verbal abuse, which occurred during Tumpkin's tenure as an Assistant Coach for the University of Colorado ("University") men's football team, and from the University's handling of Plaintiff's report of the abuse. Plaintiff seeks to hold accountable Tumpkin as well as four individuals affiliated with the football team or University, namely Head Coach Mike MacIntyre, Athletic Director Rick George, Chancellor Philip DiStefano, and President Bruce Benson (jointly, "Moving Defendants"), for failing to properly address or report Plaintiff's allegations of Tumpkin's wrongdoing.

This matter is before the Court on two motions to dismiss. Defendants DiStefano and Benson (the "University Defendants") and Defendants MacIntyre and

George (the "Athletic Defendants") filed separate motions to dismiss Plaintiff's negligence claims against them. (ECF No. 16; ECF No. 17.) Though University Defendants and Athletic Defendants filed separate motions, they make substantially similar arguments: (1) the Court lacks subject matter jurisdiction under the Colorado Governmental Immunity Act ("CGIA") because Moving Defendants are state employees immune from suit; (2) Plaintiff fails to state a negligence claim because she has not stated a legal duty; (3) Plaintiff has not alleged cognizable damages so her tort claim fails; (4) Plaintiff's conspiracy claim fails because Plaintiff has no underlying tort claim against Moving Defendants; and (5) portions of the Complaint should be stricken as impertinent and immaterial under Federal Rule of Civil Procedure 12(f). For the reasons discussed below, the Court agrees that Plaintiff has not stated and cannot state a legal duty and thus her negligence and civil conspiracy claims against Moving Defendants fail. Because the Court's ruling under Rule 12(b)(6) is dispositive, the Court need not reach Moving Defendants' arguments on immunity under the CGIA, damages, or striking portions of the Complaint under Rule 12(f).

## I. BACKGROUND

The following allegations are taken from the Complaint. (ECF No. 1.) The Court assumes these allegations to be true for purposes of this motion.

Plaintiff and non-moving Defendant Tumpkin had a relationship from December 2013 to November 2016 during which Tumpkin repeatedly engaged in abusive and violent behavior toward Plaintiff. (ECF No. 1 ¶ 2.) The University hired Tumpkin as an Assistant Coach for the men's football team in February 2015. (*Id.* ¶ 5.) In February 2015, while Tumpkin resided in temporary accommodations provided by the University

in Broomfield, Colorado, he began "physically, psychologically[,] and verbally abusing Plaintiff" and a "pattern of abuse followed thereafter, through November 20, 2016." (*Id.*) Plaintiff alleges that during this period, Tumpkin choked her "approximately one hundred times." (*Id.* ¶¶ 37, 64.) Plaintiff ended her turbulent relationship with Tumpkin in November 2016. (*Id.* ¶ 64.) In December 2016, Plaintiff was diagnosed with post-traumatic stress disorder as a result of Tumpkin's abuse. (*Id.* ¶ 67.)

In December 2016, Plaintiff reported Tumpkin's abuse to his employer. Specifically, on December 7, 2016, Plaintiff e-mailed Head Coach MacIntyre and asked that he contact her about a "very confidential concern" about Tumpkin. (*Id.* ¶ 69.) On December 9, 2016, MacIntyre called Plaintiff. (*Id.* ¶ 71.) During that call, Plaintiff relayed to MacIntyre the history of Tumpkin's abusive behavior and his propensity to abuse alcohol and drive while intoxicated. (*Id.*) Plaintiff also told MacIntyre that Tumpkin was "dangerous to women and to drivers and pedestrians on the road" and expressed concern that Tumpkin would kill himself, her, or someone else. (*Id.* ¶ 72.) Plaintiff claims that she "expected MacIntyre's help to protect her and others from Tumpkin," and that MacIntyre was required "both by contract and University policy, to act in a manner to assure that he and his staff comply with University policies and the law." (*Id.* ¶¶ 75, 77.) In response, MacIntyre allegedly told Plaintiff that he believed her and "promised that he would exercise his authority to address the issue immediately." (*Id.* ¶ 76.)

After Plaintiff's report, MacIntyre contacted Tumpkin about the allegations and allegedly provided him with contact information for an attorney, who Tumpkin later

3

engaged as counsel. (*Id.* ¶¶ 86, 88.) Plaintiff claims that by informing Tumpkin about Plaintiff's report, MacIntyre "greatly increased the danger presented to Plaintiff." (*Id.* ¶ 87.)

Plaintiff alleges that the only people who were informed about her report on Tumpkin were a "small group of people, which only included people they felt confident would place the football team's interests over their legal and ethical duties and obligations." (*Id.* ¶ 84.) On December 10, 2016, MacIntyre informed Plaintiff that he had contacted Athletic Director George (his direct supervisor) and the two had set up a meeting to discuss Plaintiff's concerns. (*Id.* ¶ 81.) George did not inform the University's Title IX Coordinator. (*Id.* ¶ 92.) By December 11, George informed Chancellor DiStefano of the allegations. (*Id.*) By December 14, DiStefano decided not to report the issues raised by Plaintiff to the University's Title IX Coordinator. (*Id.* ¶ 93.) During the week of December 16, DiStefano informed President Benson about the issues raised by Plaintiff. (*Id.* ¶ 98.) Benson did not contact the Title IX Coordinator. (*Id.*) On December 28, DiStefano informed University Counsel Patrick O'Rourke about the situation. (*Id.* ¶ 99.) O'Rourke did not inform the Title IX Coordinator. (*Id.*)

During the same period, the University football team was preparing to play in the Alamo Bowl. On December 16, 2016, MacIntyre held a press conference to announce that Tumpkin had been promoted to Defensive Coordinator for the Alamo Bowl. (*Id.* ¶ 96.) On December 28—the day of the Alamo Bowl and DiStefano's conversation with O'Rourke about Plaintiff's claims—DiStefano and O'Rourke discussed that MacIntyre and George were considering permanently promoting Tumpkin and extending his

4

contract. (*Id.* ¶ 99.)

In December 2016, Plaintiff also sought to redress Tumpkin's actions through the criminal justice system. Plaintiff reported Tumpkin's abuse to the Broomfield Police Department and sought a civil protection order. (*Id.* ¶ 100.) Plaintiff obtained a temporary protection order on December 20, 2016 and a permanent order on January 25, 2017. (*Id.* ¶¶ 101, 104.) On January 31, 2017, the Broomfield Police Department charged Tumpkin with felony and misdemeanor charges. (*Id.* ¶ 107.)

When the press contacted the University on January 6, 2017 about the temporary protection order, the University placed Tumpkin on administrative leave. (*Id.* ¶ 103.) On January 26, 2017, the day after the permanent protection order was issued, University officials requested that Tumpkin resign. (*Id.* ¶ 105.) Tumpkin tendered his resignation the following day. (*Id.*)

The University subsequently engaged outside counsel at Cozen O'Connor and WilmerHale to investigate "its failure and the failures of its personnel in this matter." (*Id.* ¶ 108.) The law firms issued two separate reports, one on the institutional response to the allegations of domestic violence (Cozen O'Connor) and the other on proposed disciplinary measures (WilmerHale). The Cozen O'Connor report concluded that MacIntyre, George, and DiStefano failed to report allegations of domestic violence to the University's Office of Institutional Equity and Compliance ("OIEC") in violation of University Policy. MacIntyre, George, and DiStefano received letters of reprimand. (*Id.* ¶ 112.) MacIntyre and George made $100,000 contributions to programs supporting victims of domestic or dating violence. (*Id.*) DiStefano agreed to take ten days of paid

5

leave and the University donated DiStefano's salary for that period to programs supporting victims of domestic or dating violence. (*Id.*)

On September 6, 2017, Plaintiff filed a lawsuit against Tumpkin and Moving Defendants. Plaintiff is pursuing a general negligence claim against Moving Defendants. Plaintiff alleges that she suffered "physical and psychological injuries, trauma and other damages" as a result of Moving Defendants' failure to take appropriate action to supervise subordinates and report information to the University. (*Id.* ¶¶ 9, 134–44, 148–55, 158–62, 165–68.)

## II. LEGAL STANDARD

In reviewing a Motion to Dismiss under Rule 12(b)(6), the Court will "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007). Thus the Court "must accept all allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("*Twombly*")).

"[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570). This means that "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she

6

is entitled to relief. 'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Twombly,* 550 U.S. at 545 & 556). The plaintiff "does not need detailed factual allegations" but must plead more than merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.*

### III. ANALYSIS

The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because Plaintiff is a citizen of Michigan and all Defendants are citizens of Colorado, and the amount in controversy exceeds $75,000 exclusive of interests and costs. As a federal court sitting in diversity jurisdiction, the Court applies the law of the state where the claim was brought, namely Colorado. *Sellers v. Allstate Ins. Co.*, 82 F.3d 350, 352 (10th Cir. 1996).

**A.    Negligence Claim**

To state a cause of action, Moving Defendants must owe a duty of care to Plaintiff. "A negligence claim must fail if based on circumstance for which the law imposes no duty of care upon the defendant for the benefit of the plaintiff." *Univ. of Denver v. Whitlock*, 744 P.2d 54, 56 (Colo. 1987). Whether a legal duty exists is a question of law for the court to determine. *United Blood Servs., Inc. v. Quintana*, 827 P.2d 509, 519 (Colo. 1992).

Plaintiff contends that Moving Defendants breached a duty of care by failing "to abide by University policies," failing to report "these issues as required by law," and violating "the duties they owed to Plaintiff." (ECF No. 1 ¶¶ 2, 6.) Under the CGIA, a University policy cannot form the basis for a tort duty. Colo. Rev. Stat. § 24-10-106.5.

7

Plaintiff has not established the existence of a statutory duty for Moving Defendants to act under the circumstances alleged.  Plaintiff has cited no Colorado cases acknowledging a generic duty of care requiring an employer or other person to affirmatively act upon a report of domestic violence.  Nor has Plaintiff pleaded a special relationship between herself or Tumpkin and Moving Defendants that would transform Moving Defendants' failure to act into tortious conduct.  In short, under the facts alleged, Plaintiff has not stated and cannot state a duty of care owed by Moving Defendants to Plaintiff.  Absent a duty of care, Plaintiff does not have a viable claim for negligence under Colorado law.  *See Whitlock*, 744 P.2d at 56.

    1.    <u>University Policy</u>

Plaintiff bases her negligence claim in part on Moving Defendants' failure to abide by University policies to report misconduct.  (ECF No. 1 ¶ 2; ECF No. 35 at 6; ECF No. 36 at 6–7.)  Colorado law plainly precludes Plaintiff from relying on University policy to establish a duty of care.  The CGIA states that "adoption of a policy or a regulation to protect any person's health or safety shall not give rise to a duty of care on the part of a public entity or public employee where none otherwise existed."  Colo. Rev. Stat. § 24-10-106.5.  In addition, "failure to enforce any such policy or regulation . . . shall not give rise to a duty of care where none otherwise existed."  *Id.*  The University is a "public entity" and Moving Defendants are "public employees" under the CGIA.  Colo. Rev. Stat. § 24-10-103; *Univ. of Colo. v. Booth*, 78 P.3d 1098, 1102 (Colo. 2003).  Under the plain language of the statute, University policy does not establish a legally cognizable duty of care, and thus an alleged violation thereof does not constitute a breach of a legal duty.  Thus, Plaintiff must rely on something other than University

policy to establish a duty of care.

    2.    Statutory Duty

Plaintiff fails to plead a statutory duty of care or any facts to support a statutory duty of care. Plaintiff merely alleges that Moving Defendants failed to report issues "as required by law" and "breached [their] duty of care by failing to follow . . . legal obligations to report the information." (ECF No. 1 ¶¶ 137, 149, 159, 165.) Nowhere does Plaintiff define this "legal obligation" or explain the origin of such an obligation. Defendants correctly argue that Plaintiff has not alleged the existence of a statutory duty. (ECF No. 16 at 7; ECF No. 17 at 5 n.2.) In response, Plaintiff fails to reference any statutory obligation that would establish a duty of care owed by Moving Defendants to Plaintiff. (ECF No. 35 at 4–8; ECF No. 36 at 4–8.) In the absence of any argument on this point, the Court finds that Moving Defendants had no statutory duty to report Plaintiff's allegations and Plaintiff cannot base her negligence claim on an undefined statutory duty.

    3.    Common Law Duty

The final way for Plaintiff to establish a duty of care is under the common law of Colorado. The existence and scope of a legal duty is a question of law for the Court to decide. *See HealthONE v. Rodriguez ex rel. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002).

> In determining whether a duty should be recognized, a court must consider many factors, including: (1) the risk involved, (2) the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, (3) the magnitude of the burden guarding against injury or harm, and (4) the consequences of placing the burden upon the actor.

*Id*. (citations omitted). No one factor is controlling and the issue essentially comes

down to "fairness under contemporary standards." *Montoya v. Connolly's Towing, Inc.*, 216 P.3d 98, 104 (Colo. App. 2008) (quoting *English v. Griffith*, 99 P.3d 90, 94 (Colo. App. 2004)). In addition, "the law distinguishes between acting and failure to act, that is, misfeasance, which is active misconduct that injures others, and nonfeasance, which is a failure to take positive steps to protect others from harm." *Id.* at 105 (quoting *Smit v. Anderson*, 72 P.3d 369, 372 (Colo. App. 2002)). "[I]n nonfeasance cases, the [party asserting negligence] has the added burden of establishing that a special relationship exists between the parties such that social policy justifies the imposition of a duty to act." *Id.*

      a.    *Misfeasance*

Plaintiff argues that "this is a case of misfeasance" in which Moving Defendants' active misconduct conduct injured Plaintiff. (ECF No. 35 at 5; ECF No. 36 at 5.) Plaintiff's argument for misfeasance vacillates between calling on the Court to recognize a generic duty of care under these circumstances and/or finding that, even if no such duty of care existed, that Moving Defendants (and in particular MacIntyre) voluntarily assumed a duty of care, which they then proceeded to breach. Both Plaintiff's theories fail as a matter of law.

To support her position that Moving Defendants owed to her a duty of care, Plaintiff relies heavily on *Montoya v. Connolly's Towing, Inc.*, 216 P.3d 98 (Colo. App. 2008). In *Montoya*, the plaintiff sustained injuries while towing a third party's vehicle from the defendant's lot. *Id.* at 101. Contrary to the defendant's usual customer safety rules, the defendant allowed a third party (who was a friend or relative) to access the lot and to alter the vehicle. *Id.* at 103. Those changes contributed to an accident that

10

injured the plaintiff. *Id.* at 101. The court concluded that the defendant had a "duty to apply its customer safety rules uniformly or, alternatively, to disclose to third parties that its customer safety rules were not applied to vehicles owned by certain individuals." *Id.* at 106.

The present case is distinguishable from *Montoya* in at least two ways. First, the University policies were presumably intended to reduce misconduct, illegal activity, abuse, sexual violence, and other misconduct by those affiliated with the University perpetrated on individuals affiliated in some fashion with the University. Unlike in *Montoya*, Moving Defendants' alleged failure to follow the University's rules and policies did not increase the risk of harm to Plaintiff given that, as someone with no affiliation with or connection to the University, she was not within the group of individuals that the policies were designed to protect. *See Montoya*, 216 P.3d at 105 (finding that customer safety rules were also intended to protect third parties). Moreover, Plaintiff has failed to demonstrate that she had a reasonable expectation that University policies would apply to her. Whereas the plaintiff in *Montoya* relied on the defendant's uniform application of safety policies, Plaintiff here has not established that the University policies would apply to her report of misconduct or that she reasonably relied on those practices or policies. *See Montoya*, 216 P.3d at 105; *Richardson v. DHS Drilling Co.*, 2015 WL 1378975, at *8 n.8 (D. Colo. Mar. 24, 2015).

Plaintiff also seemingly relies on the "contemporary fairness" standard for imposing a duty of care based on the four factors outlined by the Colorado Supreme Court. (ECF No. 35 at 7; ECF No. 36 at 7.) *See HealthONE*, 50 P.3d at 888.

11

However, Plaintiff does little more than simply restate the standard and claim, in a conclusory fashion, that "all factors weigh against Defendants' arguments that they owed no duty of care." (ECF No. 36 at 7.) Thus, Plaintiff has done nothing more than merely assert, without any case law support, that irregular application of policies created a "risk of injury;" failure to follow policy served "no social utility"; the likelihood of injury was "perfectly foreseeable;" no significant burden is created by imposing a duty of care; and there are no detrimental consequences from requiring Moving Defendants to report. (ECF No. 35 at 7–8; ECF No. 36 at 7–8.) Absent more, Plaintiff has failed to establish that the common law of Colorado has imposed upon the Moving Defendants a duty of care which they owed to her. This deficiency is fatal to her negligence claim for relief. *See Robbins*, 519 F.3d at 1247.

Even a more detailed Complaint would fail to establish that Moving Defendants owed Plaintiff a duty because the potential consequences of imposing a duty counsel against finding a duty under these circumstances. Indeed, confronted with similar facts, the appellate courts in Colorado have declined to impose such a generalized duty of care to an unlimited universe of third parties. As the Colorado Supreme Court declared in *Connes v. Molalla Transport. System., Inc.*, "an employer is not an insurer for violent acts committed by an employee against a third person." 831 P.2d 1316, 1321 (Colo. 1992) (recognizing the tort of negligent hiring).

In *Connes*, for example, the court found that the employer had a duty to use reasonable care in hiring a safe driver who would not create a danger to the public in carrying out his job. *Id.* at 1323. However, the court found that the employer was not responsible for performing an independent investigation into past criminal conduct

unrelated to the job duties and could not be held liable for a sexual assault committed by the employee. *Id*.

In a similar factual context, the Colorado Supreme Court has held that an employer was not liable for negligent supervision where plaintiff failed to present evidence that defendant knew that its employee would bring an underage girl, who was neither employee nor customer, to the place of business after hours and sexually assault her. *Keller v. Koca*, 111 P.3d 445, 450–51 (Colo. 2005), *as modified on denial of reh'g* (May 16, 2005). The court declined to adopt a more expansive theory of negligent supervision out of concern that finding a duty under those circumstances "would be an open invitation to sue an employer for the intentional torts of an employee founded upon a generalized knowledge of that employee's prior conduct." *Id.*

Here, Plaintiff claims that Moving Defendants (all individuals who could impact Tumpkin's employment) had a duty to take action after they learned of Tumpkin's conduct. However, the cases from the Colorado Supreme Court suggest that an employer is not liable for the tortious or criminal acts about which they had no reason to know. Moreover, nothing suggests that knowledge of such acts *after they occurred* would impose any duty of care on the employer for individuals in the capacity or role Plaintiff finds herself in this case. Nor do they suggest that a defendant's actions after learning about such acts would necessarily render a defendant liable for emotional distress damages. For all these reasons, the Court declines to recognize a duty of care owed to Plaintiff by the Moving Defendants in these circumstances.

Finally, Plaintiff also appears to argue that Moving Defendants, particularly MacIntyre, assumed a duty of care after they learned of Tumpkin's treatment of

Plaintiff. The Court is thus faced with the question of whether MacIntyre (or the other Moving Defendants) assumed a duty to Plaintiff through affirmative acts or a promise to act to render a service to Plaintiff to prevent the harm to Plaintiff, and that Plaintiff relied on MacIntyre to perform the service or that MacIntyre increased Plaintiff's risk of harm. *Jefferson Cty. Sch. Dist. R-1 v. Justus By & Through Justus*, 725 P.2d 767 (Colo. 1986).

Here, MacIntyre's comments to Plaintiff do not evince an assumption of a duty of care owed to her. In this context, too, *Montoya* is instructive. Unlike *Montoya*, Moving Defendants did not render service to Plaintiff for her protection. *Montoya*, 216 P.3d at 105–06. Moreover, the circumstances created by MacIntyre (namely, his knowledge of events and disclosure to certain others) did not place Plaintiff at risk for harm against which MacIntyre (according Plaintiff) undertook a duty to prevent. *Id.* (citing *Smit*, 72 P.3d at 374). Under these circumstances, MacIntyre did not assume a duty of care, and thus owed no duty to Plaintiff.

The other Moving Defendants' actions which supposedly demonstrate an assumption of duty were even more minimal than those of MacIntyre. The Court similarly concludes that the other Moving Defendants did not assume a duty of care owed by them to the Plaintiff.

   b. *Nonfeasance*

The only remaining possibility for Plaintiff to establish that Moving Defendants had a duty of care owed to her is for Plaintiff to state a claim for nonfeasance (failure to act). *See Whitlock*, 744 P.2d at 59 n.4. The Colorado Supreme Court has recognized

that imposing a universal duty for failure to act "would simply not meet the test of fairness under contemporary standards." *Id.* at 58. Thus, a defendant may be liable for nonfeasance only when there is a "special relationship" such that "social policy justifies the imposition of a duty to act." *Id.* (citation omitted) (holding that, absent a special relationship, defendant University of Denver was not liable for nonfeasance where it "had it in its power to take reasonable action to eliminate the peril but had no part in creating it"). Stated differently, the law will not impose a duty to act absent a special relationship. *Perreira v. State*, 768 P.2d 1198, 1208 (Colo. 1989).

Plaintiff does not allege any special relationship between Moving Defendants and herself. Indeed, she specifically states that Moving Defendants owed her only a reasonable duty of care. (ECF No. 1 ¶¶ 133, 147, 157, 164 ("[Defendant] owed a duty of ordinary care to Plaintiff.").) Moreover, the factual circumstances alleged by Plaintiff counsel against finding any special relationship between the Moving Defendants and Plaintiff: she was not a University student or employee, or otherwise affiliated or potentially affiliated in any way with the University. Nor has Plaintiff argued that social policy justifies finding a special relationship between her and Moving Defendants.

Additionally, Plaintiff has not asserted any special relationship between Moving Defendants and Tumpkin that would compel Moving Defendants to intercede between Tumpkin and Plaintiff. Tumpkin's actions took place outside of scope of his position with the University, and seemingly without his employer's knowledge. In other words, the tortious conduct which Plaintiff alleges Tumpkin inflicted upon her in no way depended upon his position as a coach with the University in order to be carried out. Absent a special relationship between them and the Plaintiff, therefore, the Moving

15

Defendants are not liable for a failure to act in response to Plaintiff's complaints. *See Whitlock*, 744 P.2d at 58.

It is clear to the Court, therefore, that on these facts Moving Defendants had no special relationship with Plaintiff or Tumpkin. Absent such a special relationship, Plaintiff cannot sustain an action against Moving Defendants for a negligent failure to act. *See Whitlock*, 744 P.2d at 58. As a consequence the Court concludes that Moving Defendants did not owe Plaintiff a duty of care, and therefore Plaintiff has necessarily failed to state a claim on which relief may be granted.

* * * * *

While Plaintiff's allegations of domestic violence at the hands of Tumpkin are disturbing, Moving Defendants are not legally liable to Plaintiff under a theory of general negligence because they did not owe Plaintiff a duty of care. *See* section III.A, *supra*. The fatal flaw in Plaintiff's effort to hold Moving Defendants liable is that Tumpkin could have engaged in the exact same conduct regardless of his affiliation with the University. Certainly, Plaintiff's disclosure raises concerns about Tumpkin's personal behavior, which could very well impact his fitness as a coach. But the University and Moving Defendants provided neither access nor cover for Tumpkin's alleged conduct.

The law does not always require that people with knowledge of bad acts take action. Indeed, requiring action under the circumstances alleged would be a drastic expansion of Colorado tort law and could have unintended consequences. For instance, there would be paradigm shift in employment and tort law if the law compelled an employer upon a report from a third party of wrongdoing by an employee entirely unrelated to the position, to take disciplinary action against the employee in order to

avoid liability for emotional distress damages.

In the absence of clear guidance from Colorado appellate courts to find a duty of care under these circumstances, the Court declines to undertake such an expansion of Colorado tort liability. *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1295 (10th Cir. 2017) ("[W]e are generally reticent to expand state law without clear guidance from its highest court.").

The Court is concerned, however, about the apparent reluctance of the University and its senior athletic staff to take substantial steps to address Plaintiff's allegations until they were publicly reported. The Court's concerns are redoubled given the context of the emerging national conversation exposing wrongdoers (usually, but not always, male) who use positions of power to dominate and control subordinate individuals (usually, but not always, female). Nonetheless, the reality is that courts of law intentionally move more slowly than the court of public opinion. At present, Plaintiff's claims against Moving Defendants have no basis in the law. Plaintiff may seek redress only against her abuser under civil and criminal laws of Colorado.

Because the Court grants Defendants' motions to dismiss under Rule 12(b)(6), the Court need not consider Moving Defendants' arguments under Rule 12(b)(1), secondary arguments under Rule 12(b)(6), or Rule 12(f).

**B.    Civil Conspiracy**

Moving Defendants also ask the Court to dismiss the civil conspiracy claim because Plaintiff's negligence claim fails. (ECF No. 16 at 13; ECF No. 17 at 15.) In response, Plaintiff states only that the allegations are sufficient to state a claim for negligence and that her civil conspiracy claim is supported by that underlying

17

wrongdoing.  (ECF No. 35 at 9; ECF No. 36 at 10.)

Under Colorado law, conspiracy "is a derivative cause of action that is not actionable per se." *Double Oak Const., L.L.C. v. Cornerstone Dev. Intern., L.L.C.*, 97 P.3d 140 (Colo. App. 2003).  To recover damages for civil conspiracy, there must be (1) two or more persons, (2) an object to be accomplished, (3) an agreement on the object or course of action, (4) one or more unlawful overt acts, and (5) damages as the proximate result thereof.  *Jet Courier Serv. Inc. V. Mulei*, 771 P.2d 486, 502 (Colo. 1989).  "If the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself." *Double Oak*, 97 P.3d at 146; *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995) ("[C]onspiracy must involve an unlawful act or unlawful means . . . [and] a party may not be held liable for doing in a proper manner that which it had a lawful right to do.").

As discussed above, Plaintiff fails to state a negligence claim against Moving Defendants.  Because Plaintiff has no underlying tort claim against Moving Defendants, Plaintiff's civil conspiracy claim likewise fails.  *See Double Oak*, 97 P.3d at 146.  The Court therefore grants Moving Defendants' motions to dismiss the civil conspiracy claim.

### IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants DiStefano and Benson's Motion to Dismiss (ECF No. 16) is GRANTED;

2. Defendants MacIntyre and George's Motion to Dismiss (ECF No. 17) is

GRANTED;

3. Claims V–VIII for negligence are DISMISSED WITH PREJUDICE;

4. Claim IX for civil conspiracy is DISMISSED WITH PREJUDICE; and

5. The Stay of Discovery as to Defendant Tumpkin remains in place, and the Court DIRECTS Plaintiff and Tumpkin to continue to file monthly status reports consistent with Judge Michael E. Hegarty's March 5, 2018 Minute Entry (ECF No. 54), or consistent with such further order(s) Judge Hegarty may see fit to enter given future developments in this action.

Dated this 18th day of July, 2018.

BY THE COURT:

William J. Martínez
United States District Judge